| | |
|---|---|
| MARK A. SCHAPPELL and LORRI SCHAPPELL<br>1727 Rita Road<br>Baltimore, MD 21222,<br><br>*Individually and on behalf of a class of persons*<br>*similarly situated,*<br><br>         *Plaintiffs,*<br><br>   v.<br><br>PNC, N.A.<br>249 Fifth Avenue<br>Pittsburgh, PA 15222,<br><br>     Serve on:<br>     CSC-LAWYERS INCORPORATING<br>     SERVICING CO.<br>     7 St. Paul Street, Suite 1660<br>     Baltimore, MD 21202<br><br>         *Defendant.* | IN THE<br><br><br>CIRCUIT COURT<br><br><br>FOR<br><br><br>BALTIMORE COUNTY<br><br><br><br><br>Case No. _____ |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Mark A. Schappell and Lorri Schappell ("Named Plaintiffs" or the "Schappells"), on behalf of themselves and all others similarly situated, as defined herein, sue Defendant PNC, N.A. ("PNC" or "Defendant") for violations of Maryland's Finder's Fee Act, Md. Code Ann., Com. Law §§ 12-801 *et seq.*

## INTRODUCTION

1.     This is a class action brought by the Schappells on behalf of themselves and a class of similarly situated persons, seeking relief from the predatory mortgage practices of PNC, including through its predecessor National City Bank, N.A. and its division National City Mortgage Co. ("National City"), in violation of the Maryland Finder's Fee Act.

2.      Named Plaintiffs and the Class are persons who entered into mortgage loan transactions using a mortgage broker where: (1) the mortgage broker is also identified as the mortgage lender in the operative documents relating to the transaction; (2) the mortgage broker received a finder's fee as that term is defined in Md. Code Ann., Com. Law § 12-801(c); but (3) the loan was in fact funded by another Third Party Funding Lender.  This practice is commonly known as "table funding."

3.      The Finder's Fee Act prohibits a mortgage broker that also acts as a mortgage lender in a mortgage loan transaction from collecting a "finder's fee," broadly defined by the Finder's Fee Act to include any type of compensation to or for the benefit of the broker for the broker's services in procuring, processing, or arranging the loan.

4.      Defendant PNC's predecessor National City conspired with mortgage brokers to violate the Finder's Fee Act by agreeing and requiring that brokers (a) act as both the mortgage broker and the nominal mortgage lender in mortgage loan transactions, when National City and the brokers/nominal lenders knew, agreed, and understood that National City was the funding lender; and (b) charge unlawful finder's fees to borrowers in connection with those transactions.

5.      In its conspiracy with brokers to violate the Finder's Fee Act, PNC's predecessor National City allowed brokers to charge and collect from borrowers unlawful finder's fees for "loan origination," "processing," "administration," "correspondent services," "underwriting," "tax services," and other charges.  These unlawful finder's fees averaged more than $3,000 per mortgage transaction, resulting in millions of dollars or more in unlawful charges to borrowers during the twelve-year period covered by this Class Action Complaint.

2

## PARTIES

### A. Named Plaintiffs

6.      Mark and Lorri Schappell reside in Baltimore, Maryland.

7.      Mr. and Mrs. Schappell refinanced their home at 1727 Rita Road, Baltimore, MD 21222, on or about March 2, 2004.

8.      In connection with the origination of their mortgage loan, the Schappells paid at least $7,597.00 in finder's fees, as shown by the "800" section of their HUD-1 Settlement Statement. *See* HUD-1 Settlement Statement, attached as **Exhibit 1**.

### B. Defendant

9.      PNC is a national bank incorporated in Delaware with its principal place of business at 249 Fifth Avenue, Pittsburgh, PA 15222.  PNC regularly and systematically conducts business throughout the State of Maryland.

10.     Prior to its merger with PNC, National City Bank, N.A. was a bank headquartered in Cleveland, Ohio.  PNC acquired National City, including its division National City Mortgage, by merger effective on or about November 6, 2009 and acquired the assets, responsibilities, and liabilities of National City.  All references herein to National City are also to PNC, which is liable as the successor in interest to National City for the misstatements, omissions, and other wrongful conduct of National City alleged herein.

11.     During the time period relevant to this Complaint, National City funded numerous types of mortgage loans in Maryland, including refinancing transactions like the Schappells' loan.

3

12.     During the time period relevant to this Complaint, National City made various types of mortgage loans to Class members in Maryland through table-funding arrangements with mortgage brokers where the broker was listed on loan documents as the "lender."

## JURISDICTION AND VENUE

13.     This Court has personal jurisdiction over PNC because PNC transacts business, performs work or service, and contracts to supply services in the State of Maryland.

14.     Venue is proper because PNC carries out regular and substantial business in Baltimore County and regularly solicits business from residents of Baltimore County, including regularly providing credit to Baltimore County residents, placing liens on property in Baltimore County, and selling mortgages in Baltimore County.

## FACTUAL ALLEGATIONS

### A.  The Finder's Fee Act

15.     The Finder's Fee Act contains certain requirements and prohibitions regarding the business of making residential mortgage loans in the State of Maryland.

16.     Among the prohibitions of the Finder's Fee Act is the prohibition set forth in § 12-804(e) that a mortgage broker may not charge a "finder's fee" in any transaction in which the mortgage broker (or an owner, partner, director, officer, or employee of the broker) is also acting as the mortgage lender (or an owner, partner, director, officer, or employee of the lender). The Finder's Fee Act thus forbids the collection of a finder's fee by someone acting as both broker and lender.

17.     Pursuant to § 12-801(e) of the Finder's Fee Act, a "finder's fee" includes any compensation or commission directly or indirectly imposed by a broker and paid by or on behalf of the borrower for the broker's services in procuring, arranging, or otherwise assisting a

4

borrower in obtaining a loan or advance of money, but not including charges for the actual cost of any appraisal or credit report obtained by the mortgage broker.

**B. Table-Funding by National City**

18.    In making mortgage loans in Maryland, National City relied heavily on mortgage brokers who procured new borrowers and originated the mortgage loan for National City. These brokers also processed loan applications from the borrowers, and often acted as nominal lenders in those transactions.

19.    National City made mortgage loans in Maryland through mortgage brokers/nominal lenders using the practice of table-funding, as described above.

20.    At all time relevant to this action, National City table-funded mortgages in Maryland which were originated by mortgage brokers acting as both the mortgage broker and the nominal lender.

21.    Loans table-funded in Maryland by National City were assigned by the brokers/nominal lenders to National City contemporaneously with the loan closings. These loans were not purchased by National City from the brokers/lenders in the normal secondary market for mortgage loans.

**C. National City's Table-Funded Loan to Named Plaintiffs**

22.    On or about March 2, 2004, Plaintiffs Mark and Lorri Schappell refinanced the mortgage on their home at 1727 Rita Road, Baltimore, MD 21222.

23.    Maryland Financial Resources, Inc. ("Maryland Financial Resources") acted as the Schappells' mortgage broker and aided and assisted them in obtaining a mortgage from National City, the funding lender.

24.    At the same time, Maryland Financial Resources is also identified as the "lender" for this loan transaction on the Settlement Statement, the Note, the Deed of Trust and other loan documents.

25.    Thus, Maryland Financial Resources acted as both the mortgage broker and the nominal mortgage lender, and National City table-funded the mortgage loan and acted as the funding lender.

26.    As was typical of National City's scheme, however, Maryland Financial Resources did not maintain a warehouse line of credit from which it funded the loan to the Schappells or otherwise conduct the underwriting for the Schappells' mortgage loan. Thus, while Maryland Financial Resources placed its name on the promissory note and other operative documents as the lender, Maryland Financial Resources itself did not advance any funds for the National City loan.

27.    At closing of the Schappells' 2004 refinancing transaction, the Schappells paid at least $8,412.00 in closing costs and settlement fees. Of these fees, Maryland Financial Resources received finder's fees of approximately $7,597.00, in "loan origination" and "loan discount," "processing," and "document prep" charges. These finder's fees were paid to Maryland Financial Resources by or on behalf of the Schappells.

## CLASS ALLEGATIONS

28.    Named Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals composing a class pursuant to MD. RULE 2-231 (the "Class") who were borrowers in mortgage loan transactions secured by real property in the State of Maryland during the period commencing twelve years before this Class Action Complaint was filed to the present (the "Class Period") where: (a) the mortgage loan is closed in the name of a nominal lender

6

(other than National City); (b) National City funded the mortgage loan; and (c) National City received an assignment of the mortgage loan from the nominal lender contemporaneous with the closing.

29.    Excluded from the Class are all persons who are now or have ever been executives of PNC or National City.

30.    The Class is identifiable, and Named Plaintiffs are members of the Class.

31.    Based upon inquiry by Named Plaintiffs and upon information and belief, the Class consists of hundreds if not thousands of individuals and is so numerous that joinder of all members would be impractical.

32.    There are questions of law or fact which not only are common to members of the Class but which predominate over any questions affecting only individual Class members.  These predominating questions include, but are not limited to:

     a.  Whether entities, such as Maryland Financial Resources, acted as both a broker and lender in Maryland mortgage loan transactions with Class members where National City was the actual source of loan funds;

     b.  Whether National City table-funded Maryland mortgage loan transactions with Class members using an entity acting as both broker and lender;

     c.  Whether mortgage brokers in such transactions received finder's fees as defined by the Finder's Fee Act;

     d.  Whether mortgage brokers' collection of finder's fees in such transactions violated the Finder's Fee Act;

     e.  Whether National City conspired with mortgage brokers to violate the Finder's Fee Act; and

7

f.   Whether Named Plaintiffs and other members of the Class are entitled to relief resulting from the unlawful conduct of National City.

33.   The claims of Named Plaintiffs are typical of the claims of each member of the Class within the meaning of MD. RULE 2-231(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of the Defendant.

34.   Named Plaintiffs will fairly and adequately protect the interests of the Class within the meaning of MD. RULE 2-231(a)(4).  Named Plaintiffs are committed to vigorously litigating this matter.  Further, Named Plaintiffs have secured counsel experienced in handling consumer class actions and complex consumer litigation.

35.   Neither Named Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this claim.

36.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant and its co-conspirators, within the meaning of MD. RULE 2-231(b)(1)(A).

37.   The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of MD. RULE 2-231(b)(3).  The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.  To the best of Plaintiffs' knowledge, no litigation against Defendant concerning the Finder's Fee Act is pending or has been brought by other members of the Class.

## COUNT ONE
### Violations of § 12-804 of the Finder's Fee Act

38.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 37 as if fully set forth herein.

39.     The mortgage loan transactions which were entered into (a) by Named Plaintiffs on or about March 2, 2004, and (b) by members of the Class at other times during the Class Period, are governed by the Finder's Fee Act.

40.     Section 12-804(e) of the Finder's Fee Act prohibits a mortgage broker from charging any finder's fee in any transaction in which the mortgage broker or an owner, part owner, partners, director, officer, or employee of the mortgage broker is the lender or an owner, part owner, partner, director, officer, or employee of the lender.

41.     National City conspired with mortgage brokers/nominal lenders to violate the Finder's Fee Act by reaching an agreement and understanding with them to table-fund mortgage loan transactions of Named Plaintiffs and other members of the Class, thereby enabling brokers to charge unlawful finder's fees.

42.     National City committed multiple overt acts in furtherance of the conspiracy involving mortgage loan transactions for Named Plaintiffs and members of the Class, including but not limited to:

      a.  requiring brokers to identify themselves as the "lender" while also acting as mortgage broker;

      b.  entering into an agreement and understanding with brokers that resulted in brokers acting as both mortgage broker and lender;

      c.  underwriting or agreeing to underwrite mortgage loan transactions of Named Plaintiffs and other members of the Class;

    d.   table-funding these mortgage loan transactions;

    e.   agreeing that the mortgage brokers/nominal lenders could charge finder's fees in connection with these mortgage loan transactions, in violation of the Finder's Fee Act, and facilitating and enabling the collection of those fees;

    f.   creating documents or assisting in the creation of documents which concealed National City's role as funding lender and promoted brokers' dual role as mortgage broker and nominal lender;

    g.   concealing National City's role as funding lender; and

    h.   taking an assignment of the mortgage loans contemporaneously with the closing.

43.    As a proximate result of the conspiracy, Named Plaintiffs and members of the Class have suffered injury and damages including but not limited to the payment of unlawful finder's fees, as defined by the Finder's Fee Act.

44.    As a result of National City's conspiracy with mortgage brokers to violate the Finder's Fee Act, PNC as successor to National City is responsible for the injuries and damages suffered by Named Plaintiffs and the Class as if PNC had itself performed acts forbidden by the Finder's Fee Act.

WHEREFORE Named Plaintiffs pray that this Court grant the following relief:

A.   An order certifying this case as a class action pursuant to MD. RULE 2-231;

B.   An order requiring Defendant to return to Named Plaintiffs and the Class the finder's fees charged in violation of Md. Code Ann., Com. Law § 12-804(e);

C.   An order, pursuant to Md. Code Ann., Com. Law § 12-807, requiring Defendant PNC to pay to Named Plaintiffs and members of the Class the greater of (1) three times the amount of all finder's fees collected by Maryland mortgage brokers; or (2) the sum of $500;

D.  The costs of this action; and

E.  Such other and further relief as may be just and proper.

Respectfully submitted,

Richard S. Gordon
Martin E. Wolf
Benjamin H. Carney
GORDON & WOLF, CHTD.
102 West Pennsylvania Avenue, Suite 402
Baltimore, Maryland 21204
Telephone:  (410) 825-2300
Fax:  (410) 825-0066

Attorneys for Plaintiffs and the Class

By: _____
Benjamin H. Carney

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues in this case.

_____
Benjamin H. Carney

11